IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHELSEA TORRES and JESSAMY
TORRES, individually and as next friends and
parents of A.T., a minor child, on behalf of
themselves and all others similarly situated,

                         Plaintiffs,

          v.

LINDA SEEMEYER, in her official capacity as
Secretary of the State of Wisconsin
Department of Health Services,

                         Defendant.

OPINION and ORDER

15-cv-288-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiffs Chelsea Torres, Jessamy Torres and A.T. are a family who live in Madison,

Wisconsin.  In 2012, Chelsea and Jessamy married in New York, where same-sex marriage

was legal; in 2014, they conceived A.T. through artificial insemination, using an anonymous

sperm donor; in 2015, after same-sex marriage became legal in Wisconsin, Chelsea gave birth

to A.T.  Although Jessamy and Chelsea requested a birth certificate listing both of them as

parents, the Wisconsin Department of Health Services issued a certificate that named

Chelsea as the sole parent.

       In this case, plaintiffs contend that the department's refusal to issue a two-parent

birth certificate violates both the equal protection clause and the due process clause of the

Fourteenth Amendment.  In an order dated April 4, 2016, dkt. #65, I certified a class of

families like plaintiffs, who conceived a child through artificial insemination but had not complied with Wis. Stat. § 891.40(1), which states that a couple conceiving through artificial insemination cannot receive a two-parent birth certificate unless the procedure is performed "under the supervision of a licensed physician" and the spouse not being inseminated gives written consent for the procedure.

The parties have filed cross motions for summary judgment, dkt. ##71 and 75, which are ready for review. Not surprisingly, the department's asserted justification for denying plaintiffs a two-parent birth certificate is that Jessamy did not provide written consent for the insemination, as required by Wis. Stat. § 891.40(1). However, the undisputed facts show that the department was not enforcing § 891.40(1) against different-sex married couples until May 2, 2016, when the department changed the forms that parents of newborn babies must complete. Because it is well established that discriminatory enforcement can violate the equal protection clause and the department does not offer any justification for its discriminatory treatment, I am granting plaintiffs' motion for summary judgment and denying the department's motion with respect to class members who requested a two-parent birth certificate before May 2, 2016. However, because plaintiffs have not shown that the discriminatory enforcement continued after May 2, 2016, I am denying plaintiffs' summary judgment motion and granting the department's motion with respect to class members who requested a two-parent birth certificate on or after May 2, 2016.

The scope of this order is limited to what is necessary to provide relief to the named plaintiffs and those similarly situated to them, namely, female married couples who

2

conceived a child through artificial insemination but did not comply with the statutory requirements for obtaining a two-parent birth certificate. Obviously, this decision does not remedy any discrimination suffered by other married same-sex couples who have not received a two-parent birth certificate. However, the decision does not preclude those other couples from seeking relief from the courts. If the department wishes to avoid more litigation, it should consider taking more proactive steps to prevent discrimination from occurring.

For example, although the department concedes that female married couples who conceive a child through artificial insemination should have the same right to a two-parent birth certificate as a different-sex couple, the department has not identified any official steps it has taken to implement that concession. It has not updated its forms to be inclusive of same-sex couples and it has not provided any instructions to hospital staff regarding what they should do when a mother identifies her female spouse as a second parent on a birth certificate form. In fact, the department has failed to identify any *internal* policies or memoranda instructing department staff what to do when they receive a request for a birth certificate from two parents of the same sex. Thus, a parent completing the form, a hospital staff member submitting the information to the department or even a department employee reviewing the information might have no way of knowing that the department's position has changed. Rather, if one were relying solely on the materials provided by the department, it would be reasonable to assume that the department will not provide same-sex couples a two-parent birth certificate under any circumstances in the absence of a court order. Even a department employee could be uncertain regarding how to handle birth certificates for

3

children of same-sex couples.

The department identifies no reason why it has failed to make the changes that even it acknowledges are necessary to comply with federal law. Same-sex marriage has been legal in Wisconsin since 2014, so there is little excuse for the department to be dragging its feet so long. If the department's inaction continues, it seems inevitable that more lawsuits will follow, bringing along with them the potential for large bills for attorney fees and even damage awards. The department should act now to prevent these lawsuits, minimize confusion and provide the equal treatment that same-sex couples are entitled to receive under the law.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

UNDISPUTED FACTS

A. <u>Named Plaintiffs</u>

Plaintiff Chelsea Torres and Jessamy Torres were married in New York in 2012. In 2013, Chelsea and Jessamy decided to have a child through artificial insemination, using a fertility clinic and an anonymous sperm donor. They also decided that Chelsea would be the birth mother. Although both Chelsea and Jessamy agreed to the procedure, Jessamy does not recall signing a written consent. A physician supervised the procedure. In March 2015, in Madison, Wisconsin, Chelsea gave birth to a child, A.T.

On or around March 14, 2015, while at the hospital, Chelsea and Jessamy filled out

4

a Wisconsin Department of Health Services form for the purpose of obtaining a birth certificate for A.T.  On the form, Chelsea and Jessamy indicated that they were married and that both were parents of A.T. They supplied the requested information for both parents. However, hospital personnel did not enter Jessamy's information into the State Vital Records Information Service, so plaintiffs received a birth certificate listing Chelsea as the sole parent.

In a letter dated April 24, 2015, counsel for plaintiffs asked the Department of Health Services to issue a birth certificate that identified both Chelsea and Jessamy as parents.  In a letter dated May 1, 2015, counsel for the department stated that the "Vital Records Office . . . is evaluating the request and will respond when that evaluation is complete."  Plaintiffs have not yet received a birth certificate with both Chelsea and Jessamy identified as parents.

B.  Policies and Procedures of the Wisconsin Department of Health Services

1.  Before May 2, 2016

The Department of Health Services publishes a document called "Birth Certificate Worksheet."  When a child is born in Wisconsin, the child's birth mother or a "certifier" must complete the worksheet to obtain a birth certificate.  Hospital staff enter that information into the State Vital Records Information Service. The department then uses that information to create a birth certificate.  The department does not investigate the accuracy of the information.

Before May 2, 2016, all references on the worksheet to the mother's spouse used the

5

term "husband" and all references to a second parent used the word "father."  If the mother was married, information about the husband had to be included on the form, even if he was not the child's genetic parent.  Even after same-sex marriage became legal in Wisconsin, the department did not change the term "husband" to "spouse."  There are no instructions on the form that information about a same-sex spouse should be provided in the boxes related to the "husband."

The department publishes guidance for parents and hospital staff regarding how to complete the birth certificate worksheet.  None of these publications address the question of how a mother with a female spouse should complete the form.  Rather, all of the publications rest on an assumption that the second parent is a man.

As of December 2015, employees of the department were expressing confusion about department policy with respect to birth certificates for the children of same-sex parents.  One employee stated her belief in an email that the department's practice was that  "the [same-sex spouse]'s name would continue to not be automatically listed on the birth certificate."  Another employee acknowledged in an email that the department had "provided no direction to the hospitals" on this issue.

Before May 2, 2016, the department's birth certificate worksheet did not ask whether the child was conceived through artificial insemination or, if the child was so conceived, whether the spouses had complied with the requirements in Wis. Stat. § 891.40(1), that is, the worksheets did not ask whether (1) the artificial insemination was performed "under the supervision of a licensed physician"; or (2) the spouse not being inseminated gave "consent

6

[that was] in writing and signed by" both spouses.

Before May 2, 2016, the department had no formal procedure for determining whether a child was conceived by artificial insemination.  The department has not identified any instances in which the department issued a one-parent birth certificate to a mother on the ground that she and her husband had failed to comply with  § 891.40(1).

If a mother is married at any time from conception to birth but does not fill in the section on the form relating to the "husband," the department sends the mother a letter stating that (1) the birth certificate "has not been legally filed"; (2) the name of the husband must be entered on the birth certificate regardless whether he is the biological father; and (3) if the mother fails to respond, her child will never have a birth certificate or a Social Security number.


2.  <u>After May 2, 2016</u>

Effective May 2, 2016, the department began issuing new birth certificate worksheets. The new worksheets include a box that includes the following language:

> **Artificial Insemination:**   Per Wisconsin Statute § 891.40(1), if the pregnancy was the result of artificial insemination performed under the supervision of a licensed physician using donated semen, and if the mother's husband/spouse consents to the insemination in writing, then the mother's husband/spouse will be the natural father/parent of the child so conceived. This consent must be signed by both spouses. The signatures and the date of the insemination must be certified by the physician. The physician shall file the consent with the Department.
>
>    Check here if the child was conceived via artificial insemination using donated semen.

7

> Check here to acknowledge that written, signed consent was provided to the physician supervising the insemination.

Other than the language quoted above, all references to a spouse in the new form still are to a "husband." The department has not made any changes to the publications that provide guidance in completing the form.

When describing how the new worksheet is being implemented, the department wrote the following:

> If a spouse is identified on the worksheet, and the artificial insemination checkboxes are not checked, it is presumed pursuant to Wis. Stat. §69.14(1)(e) that the spouse is the second parent and his or her name is added (along with the mother's) to the birth certificate. If the checkbox indicating the use of artificial insemination is checked, [department] staff look to the second checkbox to see if the couple complied with Wis. Stat. 891.40. If they did, the spouse's name is added as a second parent. If they did not, only the birth mother's name is put on the birth certificate.

OPINION

A.  Scope of the Case

As a threshold matter, it is important to clarify the scope of plaintiffs' claims. The general question plaintiffs raise is whether they are entitled to a birth certificate that lists both spouses as parents, *without* having to go through a judicial process to amend the birth certificate. (The department does not challenge plaintiffs' right to amend a birth certificate through adoption proceedings. Wis. Stat. § 48.94 and § 69.15.)

All the statutes addressing birth certificates for children of married couples rest on the assumption that the couple is heterosexual, using the terms "husband" and "father" when

8

referring to the mother's spouse and second parent.  If the mother is married when she gives birth, the general rule is that "the name of the husband of the mother shall be entered on the birth certificate as the legal father of the registrant." Wis. Stat. § 69.14(1)(e)1. The name of the father cannot be changed except through an action seeking a paternity determination under Wis. Stat. ch. 767.  However, if the married couple conceived their child through artificial insemination, the husband is listed as the father only if the couple complied with the requirements in Wis. Stat. § 891.40(1). Wis. Stat. § 69.14(1)(g).  In particular, the insemination must be "supervis[ed]" by a licensed physician and the husband must give written consent to the procedure.  Wis. Stat. § 891.40(1).  (Consent of the sperm donor is not needed because his rights are extinguished automatically under Wis. Stat. § 891.40(2) when he donates sperm.)  If the couple does not comply with § 891.40(1), no father may be listed on the birth certificate. Wis. Stat. § 69.14(1)(g).

In their original complaint, plaintiffs' claim was that *all* female same-sex married couples were entitled to a birth certificate identifying both spouses as parents of a newborn child, so long as one of the spouses was the birth mother of the child.  (Even in their original complaint, plaintiffs did not seek relief for any male couples who conceived a child through surrogacy.)  However, in an order dated December 21, 2015, dkt. #46, I concluded that Chelsea, Jessamy and A.T. were not adequate class representatives for such a broad claim because of the differences between their circumstances and the circumstances of other proposed class members.  The key difference related to the way that the couple conceived the child because, as described above, the right to list the birth mother's spouse on a birth

9

certificate works differently under Wisconsin law depending on whether a couple conceives through artificial insemination or other means.

I concluded that three subclasses were needed: (1) families who conceived their child through artificial insemination and complied with the requirements in Wis. Stat. § 891.40(1); (2) families who conceived their child through artificial insemination but did not comply with § 891.40(1); and (3) families who conceived their child through heterosexual intercourse. Three subclasses were needed because the department's reasons for granting or denying a two-parent birth certificate were different for each group. (Plaintiffs later pointed out that there was another group—couples who used in vitro fertilization—because in vitro fertilization is not classified as artificial insemination. Plts.' Br., dkt. #51, at 7 n.4.)

With respect to families who used artificial insemination and complied with § 891.40(1), the department conceded that different sex and female couples are similarly situated because, in either case, the genetic father does not have any parental rights. For this reason, the department agreed that members of this group are entitled to relief now that same-sex marriage is legal in Wisconsin, even though the text of § 891.40(1) and § 69.14(1)(g) (the provision authorizing two-parent birth certificates when a married couple complies with § 891.40(1)) applies to different-sex couples only. Because the department was making no effort to defend discriminatory treatment of families who complied with § 891.40(1), those families were in a different situation from the rest of the class. (In an amended motion for class certification, plaintiffs withdrew their request to represent this group. Plts.' Br., dkt. #51, at 4.)

10

With respect to families who conceived through artificial insemination but did not comply with § 891.40(1), the department's position was that, again, different-sex couples and female couples are similarly situated and, for that reason, female couples are not entitled to include the nonbirth parent on the birth certificate because fathers are not included on the birth certificate in that circumstance.  The claim of this group was that the department is applying Wis. Stat. § 69.14(1)(g) (relating to children conceived through artificial insemination) in a discriminatory fashion by enforcing it against same-sex couples only. Because the department admitted that different-sex and female couples are similarly situated when they conceive through artificial insemination, the department's only potential defense was to deny that it is engaging in discriminatory enforcement.

Finally, with respect to families who conceived through heterosexual intercourse, the department argued that the nonbirth parent is not entitled to be placed on the birth certificate without going through judicial proceedings because, in that situation, the "birth certificate statutes cannot be casually applied to same-sex couples as if the rights of biological fathers did not exist." Dft.'s Br., dkt. #36, at 12. I understood the department's argument to be that the same-sex spouse of a birth mother is not similarly situated to a husband because § 69.14(1)(e)1 is premised on a presumption that the husband is the biological father of the child, but it is known that the same-sex spouse of the birth mother is not a biological parent.  The claim of this subclass would be that the department is applying Wis. Stat. § 69.14(1)(e)1 (relating to children not conceived through artificial insemination) in a discriminatory fashion and the task of the court would be to decide whether the

11

discrimination could be justified.

Although I took no position on whether the department's arguments would prevail on the merits, I agreed with the department that different class representatives were needed for each of the three subclasses because of the different facts and legal theories underlying the claim of each group. CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 724-25 (7th Cir. 2011) (named plaintiff is not adequate representative for class if she is not raising same claims as other class members or if her claim is subject to different defense). I gave plaintiffs an opportunity to find additional class members to represent the different subclasses, but plaintiffs did not submit any new names. As a result, I narrowed the class to the group that included the named plaintiffs. In particular, I certified the following class:

> Members of same-sex couples and their children who meet all of the following criteria: (1) at least one member of the couple gave birth to one or more children in Wisconsin on or after June 6, 2014 [the date that same-sex marriage became legal in Wisconsin]; (2) the couple was legally married at the time of the birth; (3) the couple conceived that child or those children using artificial insemination within the meaning of Wis. Stat. § 891.40; and (4) the couple did not comply with one or more requirements in Wis. Stat. § 891.40.

Dkt. #65 at 12. Again, because the department has conceded that it has no justification for treating female couples using artificial insemination differently from different-sex couples who use artificial insemination, the only remaining issue on the merits is whether the department is actually treating those couples the same.

Unfortunately, in their summary judgment briefs, plaintiffs have ignored the way that their claims have been limited. They continue to seek broad relief on behalf of all married female couples who gave birth to a child after same-sex marriage was legalized in Wisconsin.

In fact, they devote much of their briefs to arguing why  Wolf v. Walker, 986 F. Supp. 2d 982 (W.D. Wis. 2014) (legalizing same-sex marriage in Wisconsin); Baskin v. Bogan, 766 F.3d 648 (7th Cir. 2014) (legalizing same-sex marriage in Seventh Circuit), Obergefell v. Hodges, 135 S. Ct. 2584 (2015) (legalizing same-sex marriage nationally), require the department to treat same-sex couples the same as different-sex couples.  However, that argument has little relevance to the remaining issues in this case in light of the department's concession that same-sex couples and different-sex couples who use artificial insemination are entitled to the same treatment.

Plaintiffs have not asked for reconsideration of the class certification decision or even explained why they failed to acknowledge the way the court has limited the scope of the claims.  I have disregarded arguments by either side related to issues that were not certified for class treatment and do not affect plaintiffs.

## B.  Merits

As noted above, the remaining question on the merits in this case is primarily a factual one, namely, whether the department is treating female married couples the same as different-sex couples when they conceive a child through artificial insemination but fail to comply with the requirements in Wis. Stat. § 891.40(1).  In its brief, the department says that it "has been treating same-sex couples in a non-discriminatory fashion with respect to issuing two-parent birth certificates since Obergefell."  Dft.'s Br., dkt. #83, at 22.  However, the undisputed facts make it clear that, before May 2, 2016, same-sex couples and different-

sex couples were not receiving equal treatment.

The department says that neither same-sex nor different-sex couples may receive a two-parent birth certificate if they do not comply with § 891.40(1), but the department cites *no* evidence that it enforced § 891.40(1) against different-sex couples before May 2, 2016. Until then, none of the forms that new parents filled out included a question about compliance with § 891.40(1) and the department admits it did not conduct any other investigation to enforce compliance. In fact, in response to a discovery request from plaintiffs, the department could not identify a single instance in which it denied a different-sex married couple a two-parent birth certificate for failure to comply with § 891.40(1).

For proof of disparate treatment, one need look no further than the named plaintiffs themselves. The department did not grant plaintiffs' request for a two-parent birth certificate, even before department officials knew that plaintiffs had not complied with both requirements in § 891.40(1). (The department did not learn about plaintiffs' failure to comply until after plaintiffs filed this lawsuit. Dkt. #65 at 4-5.) More generally, the department has not included a place on its forms for a mother to identify a same-sex spouse as the second parent. Rather, until May 2, 2016, all references to a spouse on the forms were to a "husband." Obviously, the department is not treating female couples equally if its forms suggest that female couples may not even apply for a two-person birth certificate.

It is well-established the a state cannot apply a statute in a discriminatory manner, even if the statute is valid on its face. E.g., Yick Wo v. Hopkins, 118 U.S. 356, 374 (1886); Abcarian v. McDonald, 617 F.3d 931, 940 (7th Cir. 2010). Generally, "the appropriate

14

remedy [for an equal protection violation] is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." Heckler v. Mathews, 465 U.S. 728, 740 (1984).  In this case, plaintiffs ask for the latter remedy, namely, that the department should be required to provide two-parent birth certificates for every member of the class who was denied such a certificate before May 2, 2016, when the department began enforcing Wis. Stat. § 891.40(1) against different-sex couples.  Plts.' Br., dkt. #76, at 26 (citing Yick Wo, 118 U.S. at 374; United States v. Falk, 479 F.2d 616, 624 (7th Cir. 1973); Air Line Pilots Association, Internationall v. United Air Lines, Inc., 480 F. Supp. 1107 (E.D.N.Y. 1979)).  Plaintiffs' request makes sense because it would be difficult if not impossible to "revoke" the birth certificates issued incorrectly to different-sex couples who did not comply with § 891.40(1). In any event, the department does not respond to plaintiffs' argument about the appropriate remedy, so that argument is conceded.  Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010).  Accordingly, I am granting plaintiffs' motion for summary judgment with respect to those class members who requested two-parent birth certificates before May 2, 2016.

Plaintiffs do not concede expressly that class members who requested birth certificates on or after May 2, 2016, are not entitled to relief.  In fact, as discussed above, plaintiffs have continued to argue that all female married couples are entitled to a birth certificate identifying both spouses as parents of a newborn child, so long as one of the spouses was the birth mother of the child, even if those couples are not members of the class in this case.

15

However, nearly all of plaintiffs' arguments begin with the premise that the department is discriminating against same-sex couples.  Plaintiffs do not argue that there is any evidence of discriminatory enforcement of Wis. Stat. § 891.40(1) since May 2, 2016 and they do not develop an argument that § 891.40(1) is unconstitutional if it is applied to female couples and different-sex couples the same way.  Although plaintiffs include a small section in their briefs about a nongenetic parent's rights under the due process clause, dkt. #76 at 15-16, plaintiffs do not develop an argument or cite authority addressing an issue even remotely similar to the question whether it is a violation of substantive due process for a state to impose requirements on couples conceiving through artificial insemination.   Accordingly, I decline to consider this issue.  However, if later events reveal continued discriminatory enforcement of § 891.40(1), that would be a new issue, so this decision should not have preclusive effect on a later lawsuit raising that claim.

Another issue discussed in plaintiffs' briefs and proposed findings of fact is the department's failure—even after May 2, 2016—to amend its birth certificate forms to include a mother's female spouse. (The questions on the new form related to artificial insemination use the term "husband/spouse" but all other references to the mother's spouse refer to a "husband" exclusively.)  However, plaintiffs did not raise this issue as a separate claim in their complaint and they did not include it in their request for relief in either their complaint or their motion for summary judgment.  Even if they had, the issue would be outside the narrow scope of this case.  As discussed above, I am not granting relief to any class member who completed a birth certificate on or after May, 2, 2016, so an injunction

directing the forms to be amended could not benefit those class members.  Although I am granting relief to class members who completed a form before May 2, 2016, I can grant that relief without requiring any changes to the current form.  In other words, no class members have standing to challenge the language of the current version of the forms.  That being said, the department identifies no reason why it failed to make the form more inclusive when it was amended in May 2016.  To avoid further litigation, it would behoove the department to make the change now.

## C.  Scope of Relief

The final issue relates to the scope of relief.  Plaintiffs ask the court to invalidate Wis. Stat. § 69.14(1)(e)1, § 891.40(1) and § 891.41(a) "as written" and require that each of them "be construed in a gender-neutral manner."  Plts.' Br., dkt. #76, at 27.  As discussed above, I agree with plaintiffs that the department has been applying § 891.40(1) in a discriminatory matter, so I will direct the department to apply that provision to female couples and different-sex couples equally.

However, plaintiffs have not shown that they are entitled to the other relief they are requesting.  First, § 69.14(1)(e)1 relates to couples who did not use artificial insemination to conceive their child.  Because the class in this case is limited to couples who used artificial insemination, § 69.14(1)(e)1 is outside the scope of this case.

Second, § 891.41(a) does not address the issue of birth certificates, but rather states generally that "[a] man is presumed to be the natural father of a child" under certain

17

circumstances.  In the April 4, 2016 order, I noted that Wisconsin courts had treated the issue of two-parent birth certificates separately from the issue of the presumption in § 891.41(a).  In re Paternity of T.J.D.C., 2008 WI App 60, ¶ 10, 310 Wis. 2d 786, 793, 750 N.W.2d 957, 961 ("The presumption of paternity does not put [a man's] name on [a child's] birth certificate.").  See also Hendrick v. Hendrick, 2009 WI App 33, ¶¶ 6-7, 316 Wis. 2d 479, 485, 765 N.W.2d 865, 868 (considering effect of spousal presumption of parentage on child support claim); Matter of Estate of Schneider, 150 Wis. 2d 286, 441 N.W.2d 335 (Ct. App. 1989) (relying on spousal presumption of parentage in § 891.41 to reject inheritance claim of alleged child).  In light of this case law, I stated that, "if plaintiffs prevail in this case, they will not be entitled to a declaration that § 891.41 is unconstitutional unless they show that they cannot obtain a two-parent birth certificate without that relief."  Dkt. #65 at 12.  In their summary judgment submissions, plaintiffs have not shown that a gender neutral reading of § 891.41(a) is necessary to issue two-parent birth certificates to class members and they have not identified any harm they have suffered because of § 891.41(a).  Accordingly, I conclude that § 891.41(a) is outside the scope of plaintiffs' claims as well and that the declaration and injunction will be limited to § 891.40(1).

A second question relates to the wording of the injunction.  Plaintiffs say that they want the court to order the department "to immediately issue correct two-parent certificates to Plaintiff Class members."  Plts.' Br., dkt. #76, at 27.  However, it is not clear whether that is something the department can do "immediately."  Because this case involves equitable

18

relief only, the parties and the court agreed that plaintiffs did not have to give notice to the class. Dkt. #65 at 10-11. This means that the identities of all the class members may not be known at this time. If that is the case, then the parties may need to take interim steps before the department can issue amended birth certificates. Accordingly, I will give the parties an opportunity to file a supplemental memorandum addressing this issue, along with a proposed injunction.

ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by plaintiffs Chelsea Torres, Jessamy Torres and A.T., dkt. #75, is GRANTED with respect to class members who completed a birth certificate worksheet before May 2, 2016. The motion is DENIED in all other respects.

2.  Defendant Linda Seemeyer's motion for summary judgment, dkt. #71, is GRANTED with respect to those class members who completed a birth certificate worksheet on or after May 2, 2016. The motion is DENIED in all other respects.

3.  It is DECLARED that the Wisconsin Department of Health Services's practice before May 2, 2016 of enforcing Wis. Stat § 891.40(1) against female married couples but not different-sex couples is unconstitutional. The department is directed to construe Wis. Stat. § 891.40(1) in gender-neutral terms. In particular, the word "husband" in § 891.40(1) should be construed to mean "spouse."

19

4.  The parties may have until September 26, 2016, to confer and then submit a joint memorandum and proposed injunction to the court regarding the issuance of two-parent birth certificates to the appropriate class members.  If the parties cannot come to an agreement on this issue, they should each submit their own proposals.  If a response is necessary, the parties may have until October 3, 2016, to respond to the other's submission.

Entered this 14th day of September, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

20